J-A29044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAKWARIS ROBISON | : | |
| | : | |
| Appellant | : | No. 741 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 23, 2021,
in the Court of Common Pleas of Erie County,
Criminal Division at No(s): CP-25-CR-0000716-2020.

BEFORE: BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:        **FILED: FEBRUARY 15, 2023**

Jakwaris Robison appeals *pro se* from the judgment of sentence imposed following his convictions of second-degree murder, robbery, conspiracy, and flight to avoid apprehension.[1]

Robison's convictions arose from his activities on January 19, 2020, when he conspired with co-defendant, Marshawn Williams and co-conspirators Melissa Seaman and Michael Toles, to arrange and consummate a drug transaction with, and robbery of, Devin Way outside Way's residence in Erie. During the robbery, Way was shot and killed.

The trial court detailed the pertinent facts and trial testimony regarding the shooting incident as follows:

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1), 903, and 5126(a), respectively.

Earlier on January 19, 2020, Seaman, Toles, and Robison were riding as passengers in a grey, four-door Honda operated by Williams. While the group was driving around, Seaman messaged various third parties on her cell phone in an attempt to "see if anyone ha[d] any drugs or money that would be a possible lick." (In their vernacular, a lick is a robbery victim). After a potential target, Cohen Heath, failed to respond, Seaman continued to reach out to others on her cell phone until she successfully made contact with [Devin Way]. Way agreed to sell two (2) ounces of marijuana in exchange for $400.00.

The four co-conspirators proceeded to the Dollar Tree store located in the Liberty Plaza. [Robison], co-defendant Williams Robison, and Toles exited the vehicle and obtained items from the store, some or all of which were not paid for. [Robison's] main purpose in going to the store was to obtain gloves to eliminate the possibility of fingerprints being left behind "in case things went bad." Before the three-some returned to the car, Toles heard [Robison] and Williams discuss harming Seaman "if things went bad" to prevent Seaman from saying something.

Meantime, while Seaman waited inside the car, for the three of them to return, she obtained from Way his address. When the three returned, Seaman announced "she felt like [Way] was going to be an easy person to get at."

At trial, Toles described the foursome's plan to rob Way:

That I was going to be in the back seat and Robison would still be in the back seat and [Seaman] would get in the [front] passenger seat. And our plan was to get out of the car and let [Way] in the middle and he was going to produce a gun and tell Way to get out.

With co-defendant Williams behind the wheel, the four proceeded to Way's residence. Way exited his home and approached the Honda. As planned, [Robison] exited the back seat and instructed Way to get in the middle, next to Toles. Way refused to get in the middle, so [Robison] re-entered the back seat, took the middle position, and Way got in the car after him. Way closed the door and Williams drove off.

Way directed Williams to turn from Southgate Drive onto Usonia Avenue. Way produced and passed around for "inspection" the marijuana for sale. However, as testified to by Seaman, no one in the vehicle actually had money on them to make the

purchase. The sham inspection continued, with Seaman passing the marijuana to Williams who stated he "was good" with the marijuana.

Following a brief period of awkward silence, the drug transaction morphed into the planned robbery of Way. According to the testimony of co-conspirator Toles, Toles pulled out a gun, reached around Robison, pointed the gun at Way, and instructed Way to get out of the car. Way refused and grabbed the gun. A struggle ensued between Toles and Way for the gun. Williams, from the driver's seat, called out for Robison to assist Toles.

In response, [Robison] squeezed out from between Way and Toles and exited the car though the driver's side rear door. [Robison] ran to the other side of the car to the rear passenger door, opened the door, raised his gun and started shooting at Way.

Toles testified [Robison], the sole shooter in this incident, fired the gun four (4) to six (6) times in quick succession. According to Toles, Way was shot in the back. Seaman testified she heard approximately (4) gunshots; she heard Toles yell that he was shot, too; and when she turned around, she saw blood on Toles' leg. Seaman testified she did not see or hear from Way again.

Toles, from his position behind Williams, observed Way turn toward [Robison], and that [Robison] continued to shoot. It is apparent from Toles' testimony that after [Robison] stopped firing, either Way fell out of the vehicle through the rear passenger door where [Robison] was standing, or [Robison] pulled Way out of the car. Regardless, Toles heard Way scream during the process. Way landed on the ground, face done in the snow. [Robison] jumped back into the car through the door from which Way fell.

Trial Court Opinion, 12/13/21, at 2-4 (citations to record omitted).

The trial court also summarized the events that occurred after the shooting, as well as the eventual apprehension of Williams and Robison:

With Williams behind the wheel, the four attempted to drive away. Co-defendant Williams stopped the vehicle briefly and switched seats with Seaman so she could drive. Seaman, in a

- 3 -

panic, drove the Honda into a snowbank where it became temporarily stuck. At this juncture, [Robison] and Williams exited the car and started to run away.

Toles called out for [Robison] to return and get [Robison's] gun, Robison complied and Toles handed him Toles' gun as well. [Robison and Williams] then ran off again in the snow through someone's back yard.

Seaman managed to get the car unstuck and drove back past the shooting scene. Seaman, with Toles bleeding in the back seat, drove to a nearby Taco Bell on Peach Street where the Honda was pulled over by the police.

[Robison] and co-defendant Williams left the Erie area and each was missing for quite some time.

The police identified [Robison] as a suspect from surveillance video from the Dollar Tree Store in the Liberty Plaza. On January 22, 2021, a warrant was issued for [Robison's] arrest. The police learned [Robison] was on state parole and contacted his parole supervisor, Michelle Contis. Contis positively identified [Robison] from Dollar Tree surveillance video. Contis provided the police with [Robison's] cell phone number, which through investigation revealed he was hiding in Pittsburgh, Pennsylvania.

On January 24, 2021, [Robison] was apprehended in Pittsburgh, where he no longer was wearing the beard he had at the time of the murder. At trial, as the result of the [trial court's] ruling on a motion in limine by [Robison's] counsel, no reference was made to Contis' job title, her role as [Robison's] parole supervisor, or to [Robison's] status as a parolee at the time of the murder.

With regard to co-defendant Williams, the evening of the shooting a warrant was issued for his arrest. Wanted billboards were posted by the U.S. Marshalls Fugitive Task Force in Cleveland, Buffalo, and surrounding areas. In July of 2020, approximately seven (7) months after Way's murder, the police located co-defendant Williams at a friend's residence in the 400 block of East 22nd Street in the City of Erie. Williams attempted to remain hidden inside the residence by eventually surrendered to the police.

Trial Court Opinion, 12/13/21, at 4-6 (citations to record omitted).

Following a five-day jury trial, Robison was convicted of the above-enumerated offenses.[2]  On April 23, 2021, the trial court sentenced Robison to life without parole followed by an aggregate term of 12-24 years of imprisonment.  On April 28, 2021, Williams filed a post-sentence motion, which the trial court denied.  Robison filed a *pro se* notice of appeal, followed by a notice of appeal filed by trial counsel.  Thereafter, trial counsel filed a motion to withdraw, which the trial court granted, and appellate counsel was appointed.  After being granted a time extension, Robison filed a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal on August 30, 2021.

In response to an application for special relief, filed by appellate counsel, this Court, on October 8, 2021, remanded the case to the trial court for a ***Grazier***[3] hearing.  On November 8, 2021, the trial court held the ***Grazier*** hearing and determined that Robison's waiver of counsel was knowing, voluntary and intelligent.  Thus, Robison was permitted to proceed *pro se*, and the trial court directed Robison to file an amended Rule 1925(b) statement. Robison complied, and in his statement raised sixteen claims.  The trial court responded to each claim in its Rule 1925(a) opinion filed on February 3, 2022.

---

[2] The jury convicted Williams of the same charges.  His appeal is pending before this Court at No. 630 WDA 2021.

[3] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

Robison raises the same sixteen issues on appeal. In its Rule 1925(a) opinion, the trial court summarized, consolidated, and reordered these claims as follows:

1. Whether the Commonwealth committed **Brady** violations in a) withholding alleged "cooperation agreements" between the Commonwealth and [Toles and Seaman]; and b) withholding unspecified "exculpatory/impeachable evidence" regarding [Toles'] cooperation in another homicide case/investigation.

2. Whether abuse of discretion occurred in allowing evidence of unspecified "texting/telephonic messages between [Robison] and an unknown subject pertaining to an unrelated matter the prior day."

3. Whether abuse of discretion occurred in "not provid[ing] the jury with a cautionary instruction regarding the (sic) Pa.R.E. 404(b) after the [trial court] determined that the probative value of "the evidence" did not outweigh its potential for unfair prejudice."

4. Whether counsel was ineffective in failing to move for mistrial "after the [trial court] determined . . . the probative value of the evidence involving texting/telephonic messages between [Robison] and an unknown subject pertaining to an unrelated matter the prior day, did not outweigh its potential for unfair prejudice[.]"

5. Whether abuse of discretion occurred in "allowing" the Commonwealth to refence texting/telephonic messages during closing argument "even after . . . the trial court ruled that the texting/telephonic messages between [Robison] and an unknown subject pertaining to an unrelated matter the prior day was prejudicial to [Robison]."

6. Whether abuse of discretion occurred "by giving improper jury instructions".

7. Whether the evidence was sufficient to convict as to each conviction.

[8]. Whether abuse of discretion occurred in "allowing' the Commonwealth to: a) "Vouch or Bolster for witnesses", b)

"Comment on [Robison's] silence", and c) "misstate and misuse evidence and facts throughout [Robison's] trial.

[9]. Whether abuse of discretion occurred in denying the post-sentence motion claim that the verdict was against the weight of the evidence.

Trial Court Opinion, 2/3/22, at 8-9 (citations omitted).

In his Rule 1925(a) opinion, the trial judge first noted that Williams' statement of the errors complained of on appeal was too vague and should be considered waived. According to Judge Brabender, Williams' Rule 1925(b) statement was "woefully inadequate" in that it failed "to specify which element or elements of **any** of the crimes" that "the Commonwealth failed to prove beyond a reasonable doubt. Trial Court Opinion, 12/13/21, at 7-9. Regarding the second claim in his Rule 1925 statement, Judge Brabender concluded that Williams "broadly avers evidentiary error occurred in admitting evidence" of "unspecified text messages." **Id.** at 15.

After careful review, and mindful of our standards of review, we conclude that the Honorable Daniel J. Brabender, Jr., has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a) which addressed the issues raised by Robison in this appeal and found them to be without merit. Judge Brabender has correctly cited the applicable case law and we discern no legal errors or abuse of discretion in his analysis.

As such, we adopt Judge Brabender's Rule 1925(a) opinion as our own in affirming Robison's judgment of sentence. **See** Trial Court Opinion, 12/13/2, at 10-11 (concluding that Robison's **Brady** claim was not preserved

- 7 -

below and is otherwise without merit; both co-conspirators "credibly testified there were no deals, promises, or implication of deals for their testimony" and the Commonwealth reiterated that no promises were made during its closing); at 11-16 (finding claim regarding text messages waived for vagueness or otherwise without merit; given the other overwhelming evidence of guilt, the prejudice to Robison was *de minimus* and, if error occurred, it was harmless); at 16-17 (concluding claim regarding failure to give cautionary instruction was without merit; trial counsel agreed that such an instruction would emphasize the evidence); at 17-18 (explaining that a claim of trial counsel's ineffectiveness generally must await post-conviction review; alternatively trial counsel had no basis to move for mistrial); at 18-19 (rejecting claim involving Commonwealth's closing argument because the Commonwealth did not specifically reference the challenged text message); at 19 (concluding claim involving improper jury instructions waived for vagueness; Robison did not identify any specific instruction in his Rule 1925(b) statement and trial counsel did not object to any part of the trial court's jury instructions); at 19-28 (finding ample evidence to reject Robison's sufficiency challenge as to each conviction); at 28-29 (explaining that generic assertions of Commonwealth's misconduct in the presentation of evidence is waived for vagueness or otherwise refuted by the record); and at 29-30 (concluding Robison's

challenge to the weight of the evidence was either waived for vagueness or without merit; the jury's guilty verdicts did not shock one's sense of justice).[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/15/2023

---

[4] The parties are directed to attach Judge Brabender's February 3, 2022, opinion to this memorandum in any future appeal.